In re the WELFARE OF J.B.A., Child.

No. C9–97–1799.

Court of Appeals of Minnesota.

July 7, 1998.

Review Denied Aug. 31, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul; and Tom Foley, Acting Washington County Attorney, Gregory J. Tavernier, Assistant County Attorney, Stillwater, for appellant State of Minnesota.

John M. Stuart, State Public Defender, Charlann Winking, Assistant State Public Defender, Minneapolis, for respondent J.B.A.

Considered and decided by RANDALL, P.J., and KALITOWSKI and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge. *

Appellant State of Minnesota argues that the decision of the district court to continue J.B.A.'s case for dismissal over the objection of the prosecutor must be reversed because no "special circumstances" authorized the court to exercise its inherent judicial authority. Respondent J.B.A. argues no need exists for this court to even reach the issue of inherent judicial authority because the district court's decision was a valid disposition under Minn.Stat. § 260.185, subd. 3 (1996). The district court's disposition was valid under both Minn. R. Juv. P. 14.10 and Minn. Stat. § 260.185, subd. 3. We affirm.

## FACTS

J.B.A. was charged with third-degree assault after an altercation with another juvenile. J.B.A. does not dispute the fact that he committed assault, as evidenced by his guilty plea. Nevertheless, defense counsel asked the court not to accept J.B.A.'s guilty plea and to continue the case for dismissal because of the adverse impact that accepting the guilty plea would have on his family's Section 8 public housing.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

J.B.A.'s mother receives Section 8 housing through the Federal HUD program as a result of her disability status. Mother and J.B.A. have been living in Section 8 housing for approximately four years. Under the Section 8 housing program, assistance may be terminated if the individual on disability status or a family member has been involved in "violent criminal activity, regardless of an arrest or conviction of any family member for such activity."

Barbara Soirh, Procedure Coordinator for Metropolitan Council Housing and Redevelopment, testified that a Section 8 housing member's eligibility may be terminated if that individual or a family member engages in violent criminal activity. She also testified that hearing officers consider what a court has or has not done before rendering a decision on termination.

At the dispositional hearing, mother's case manager, Jeffrey Matt, testified that if J.B.A. and his mother lose their home it will be very difficult to find alternative quality housing. Matt was concerned that if they lost their home mother would end up living in an institution and J.B.A. would lose his mother. David Plaep, program director for Youth Investment Foundation, testified that he was aware of what J.B.A. did, but this type of behavior was not typical for J.B.A. J.B.A.'s criminal history consists of a disorderly conduct charge in the eighth grade. Plaep indicated that J.B.A. responds well to discipline and correction and agreed to monitor and supervise any probationary conditions the court imposed.

In its findings of fact, the district court found that J.B.A. and his mother would be homeless without Section 8 benefits, or else mother would be committed to an institution and J.B.A. would be homeless. Based on the seriously disproportionate consequences of accepting J.B.A.'s guilty plea, his efforts to rehabilitate himself, his lack of a criminal history, and the absence of permanent disfigurement to the victim, the district court continued the matter for dismissal. The district court based its decision on J.B.A.'s best interests and its inherent authority to continue the matter for dismissal pursuant to Minn. R.

Juv. P. 14.10. J.B.A. was placed on supervised probation for six months.

## ISSUE

Did the district court err in continuing J.B.A.'s case for dismissal over the objection of the prosecutor?

## ANALYSIS

In delinquency cases, district courts have broad discretion to order dispositions authorized by statute. *In re Welfare of M.A.C.*, 455 N.W.2d 494, 498 (Minn.App. 1990). Absent a clear abuse of that discretion, the disposition will not be disturbed. *In re Welfare of J.A.J.*, 545 N.W.2d 412, 414 (Minn.App.1996). This court will affirm the district court's disposition as long as it is not arbitrary and it achieves the goal of rehabilitating the offender. *Id.; M.A.C.*, 455 N.W.2d at 498.

The district court, acting in the interests of justice and J.B.A.'s best interests, exercised its discretion to continue the case for dismissal pursuant to Minn. R. Juv. P. 14.10. This rule authorizes the court to:

continue a case for dismissal even in the absence of an agreement by the prosecutor and the child's counsel.

*Id.* The comment section to this rule indicates that this rule "in no way limits the court's inherent authority to order a continuance for dismissal of its own volition without the agreement of the parties" citing *State v. Krotzer*, 531 N.W.2d 862 (Minn.App.1995), *review granted* (Minn. July 20, 1995). At the time the comments were drafted, the Minnesota Supreme Court had not yet affirmed this court's decision with regard to inherent judicial authority in *State v. Krotzer*, 548 N.W.2d 252 (Minn.1996). While we agree with the district court that under the rule it had the authority to continue the case for dismissal, we want to make it clear that, regardless of the comments to the rule, this is not a *Krotzer* case. In *Krotzer*, no rule or statute governed a continuance without an adjudication. In this case they do.

As previously stated, under the rules of juvenile procedure, the district court has authority to continue a case for dismissal over

the objection of both the prosecutor and child's counsel. Minn. R. Juv. P. 14.10. The district court in this case, however, did not need to base its decision on inherent judicial authority because of the express legislative grant of authority in Minn.Stat. § 260.185, subd. 3 (1996). Here, the statute authorizes the court's decision; the only limitation imposed by the statute is that the district court's decision serve J.B.A.'s best interests. *Id.* A district court is vested with the option of continuing a juvenile case for dismissal:

> When it is in the best interests of the child to do so and when the child has admitted the allegations contained in the petition before the judge or referee, or when a hearing has been held * * * and the allegations contained in the petition have been duly proven but, in either case, before a finding of delinquency has been entered, the court may continue the case for a period not to exceed 90 days on any one order. Such a continuance may be extended for one additional successive period not to exceed 90 days * * *.

*Id.*

In this case, J.B.A. admitted to the allegations at the pretrial hearing. Before making a finding of delinquency, the district court continued the case for dismissal in six months. *See In re Welfare of M.A.R.*, 558 N.W.2d 274, 276 (Minn.App.1997) (district court may continue case without a finding of delinquency for a period not to exceed 180 days.) Most importantly, the court based its decision on J.B.A.'s best interests. According to the district court, the disposition serves J.B.A.'s best interests because a continuance reduces the likelihood that he and his mother will lose their home and increases the likelihood that he can maintain a relationship with his sole remaining parent. Without Section 8 benefits, J.B.A. and his mother would be homeless, or else mother would be committed to an institution and J.B.A. would be homeless. Based on the seriously disproportionate consequences of accepting the guilty plea, the district court properly continued the matter for dismissal.

Minn.Stat. § 260.185, subd. 3, precisely defines the circumstances under which the court may grant a continuance in a juvenile proceeding. *M.A.R.*, 558 N.W.2d at 276. The district court, therefore, was not required to exercise its inherent judicial authority pursuant to Minn. R. Juv. P. 14.10. Because the district court followed all the statutory requirements, its decision was a valid exercise of statutory authority and therefore withstands the clear abuse of discretion standard. *State v. Olson*, 325 N.W.2d 13, 18 (Minn.1982) (imposing a sentence within the limits prescribed by the legislature properly lies with the judiciary).

### DECISION

The district court did not abuse its discretion in continuing J.B.A.'s case for dismissal. The district court's decision was a valid disposition under both Minn.Stat. § 260.185, subd. 3, and Minn. R. Juv. P. 14.10. In juvenile cases, courts are free to use either the rule or the statute to support a continuance because both specifically dictate when a district court can continue a juvenile case for dismissal.

**Affirmed.**