**In the Matter of the RISK LEVEL DETERMINATION OF J.V.**

No. A06–2286.

Court of Appeals of Minnesota.

Nov. 27, 2007.

John M. Stuart, State Public Defender, F. Richard Gallo, Jr., Assistant Public Defender, Minneapolis, MN, for relator J.V.

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, MN, for Minnesota Department of Corrections.

Considered and decided by DIETZEN, Presiding Judge; RANDALL, Judge; and HALBROOKS, Judge.

## OPINION

DIETZEN, Judge.

In this certiorari proceeding, relator challenges an administrative law judge's (ALJ) order dismissing his request for administrative review of his risk-level assessment under Minn.Stat. § 244.052, arguing that his right to review is unconditional and absolute. Because we conclude that the ALJ did not err in concluding that relator's request for administrative review was moot, we affirm.

## FACTS

In July 2001, relator was convicted of fourth-degree criminal sexual conduct and the district court sentenced him to 33 months in prison. Over the next two years, relator was released from prison subject to conditions on two occasions, but he was later arrested for violating the conditions and was reincarcerated. In November 2003, the department of corrections end-of-confinement review committee (ECRC) assigned J.V. a risk level III. J.V. filed a request for administrative review of the ECRC decision.

In January 2004, relator was conditionally released from the Minnesota Correctional Facility–Lino Lakes (MCF–LL), but was then civilly committed to the Minnesota Sex Offender Program (MSOP) and transferred to the Minnesota Security Hospital–St. Peter (MSH–St.Peter). Relator then requested that the ECRC proceed with a hearing on his request for administrative review of his risk-level determination.

During his civil commitment, relator was subject to conditions of release from prison, but he violated a condition and was returned to MCF–LL to complete his sentence. When his sentence expired in February 2007, he was returned to MSH–St. Peter under the civil commitment order. In August 2006, respondent moved to dismiss J.V.'s request for administrative review of the risk-level determination as moot. Following the submission of written arguments, the ALJ dismissed the request

for review on the ground of mootness. This certiorari appeal follows.

## ISSUE

■ Did the ALJ err as a matter of law in concluding that relator's request for administrative review under Minn.Stat. § 244.052, subd. 6, is moot?

## ANALYSIS

■ Relator argues that the ALJ erred in concluding that his request for administrative review under Minn.Stat. § 244.052 of the ECRC risk-level determination is moot. The issue of whether a cause of action is moot is a question of law, which we review de novo. *Isaacs v. Am. Iron & Steel Co.*, 690 N.W.2d 373, 376 (Minn.App. 2004), *review denied* (Minn. Apr. 4, 2005); *see Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (reviewing court need not defer to agency decisions or expertise when reviewing agency's legal determinations).

### A. Applicability of Mootness Doctrine

■ Relator argues that the doctrine of mootness does not apply to a request for administrative review under the statute. This case arises under the community notification act (CNA), Minn.Stat. § 244.052 (2006), which protects communities from predatory offenders by requiring law enforcement to provide notice of an offender's presence in a community. Minn.Stat. § 244.052, subd. 4. The statute provides that an offender has "the right to seek administrative review of an end-of-confinement review committee's risk assessment determination," which includes the right to a review hearing. *Id.*, subd. 6. It is well established that the doctrine of mootness applies to judicial proceedings in Minnesota. *Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn.2005). Minn.Stat. § 244.052, subd. 6(d), provides that "[t]he review hearing is subject to the contested case provisions of chapter 14." Under the rules adopted in accordance with chapter 14, an ALJ shall "recommend dismissal where the case or any part thereof has become moot." Minn. R. 1400.5500(k) (2005). Thus, the doctrine of mootness applicable to judicial proceedings is equally applicable to review hearings conducted under Minn.Stat. § 244.052, subd. 6.

### B. Mootness Requires Direct and Personal Harm

Relator argues that he will suffer direct and personal harm if the risk-level determination is not reviewed. Thus, relator argues that his appeal is not moot.

■ A court should exercise its jurisdiction to decide a matter only if there is a justiciable controversy. *See Kahn*, 701 N.W.2d at 821. A controversy is justiciable if it involves definite and concrete assertions of right. *Id.* Merely possible or hypothetical injury will not satisfy this standard. *Id.* A matter may be dismissed as moot if an event occurs that resolves the issue or renders it impossible for the court to grant effectual relief. *Isaacs*, 690 N.W.2d at 376.

■ Mootness can be described as "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Kahn*, 701 N.W.2d at 821 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 708–09, 145 L.Ed.2d 610 (2000)). To show a personal interest, a party must demonstrate "a direct and personal harm." *Nordvick v. Comm'r of Pub. Safety*, 610 N.W.2d 659, 662 (Minn.App.2000). If a party lacks the requisite personal interest and the court is unable to grant "effectual relief," the issue

raised is deemed to be moot and may be dismissed. *Kahn,* 701 N.W.2d at 821.

Relator argues that during his civil commitment, he is subject to community notification under Minn.Stat. § 244.052, subd. 4, and, therefore, his request for review is not moot. Respondent argued—and the ALJ agreed—that because MSH–St. Peter is a "residential facility" under Minn. Stat. § 244.052, subd. 1(4), community notification is prohibited, and, therefore, relator will suffer no harm arising out of his risk-level determination. We agree.

The interpretation of a statute is a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). When interpreting a statute, we give words their plain and ordinary meaning. Minn.Stat. § 645.08, subd. 1 (2006); *All Metro Supply, Inc. v. Warner,* 707 N.W.2d 1, 5 (Minn.App.2005).

Minn.Stat. § 244.052, subd. 4(b)(3), provides that law enforcement agencies shall not make any disclosure about the offender if "the offender is placed or resides in a residential facility." A "residential facility" is "a facility that is licensed as a residential program" under section 245A.02, subd. 14. *Id.,* subd. 1(4). Section 245A.02, subd. 14, defines a "residential program" as "a program that provides 24–hour–a–day care, supervision, food, lodging, rehabilitation, training, education, habilitation, or treatment outside a person's own home." Minn.Stat. § 245A.02, subd. 14 (2006). All residential programs are required to be licensed by the commissioner of human services, unless exempted by statute. Minn.Stat. § 245A.03 (2006). We conclude that the sex-offender program at MSH–St. Peter meets the definition of a "residential program." MSH–St. Peter provides 24–hour–a–day care for those committed to the sex-offender program; the residents are supervised; the program provides food and lodging; and the focus of the program is on rehabilitating, training, habilitating, and treating sex offenders.

Relator suggests that because MSH–St. Peter is defined as a "secure treatment facility," it cannot also be a "residential facility." *See* Minn.Stat. § 253B.02, subd. 18a (2006) ("secure treatment facility" means the Minnesota Security Hospital and its sex-offender program). We disagree for several reasons. First, we see nothing in that statute that precludes MSH–St. Peter from satisfying both statutory definitions. More importantly, MSH–St. Peter clearly provides a "residential program" to its residents and, therefore, meets the definition of a residential facility. Because MSH–St. Peter meets the definition of a "residential facility" under Minn.Stat. § 244.052, subd. 1(4), community notification is prohibited by Minn.Stat. § 244.052, subd. 4(b)(3).

■ Relator argues that even if community notification is prohibited under the statute, he will suffer other harm arising from the risk-level assessment. But relator failed to make this argument before the ALJ. We decline to address matters raised for the first time on appeal. *E.N. v. Special Sch. Dist. No. 1,* 603 N.W.2d 344, 348 (Minn.App.1999). But even if we did reach this issue, we would conclude that relator's argument is speculative and without merit. Relator has failed to establish any personal harm arising out of his risk-level determination. *See Isaacs,* 690 N.W.2d at 376 ("the doctrine of mootness looks towards actual occurrences, not mere speculation on events that could have happened").

### C. Capability of Repetition

■ Relator next argues that even if his request for administrative review is moot, the determination is capable of repetition

and likely to evade review. Generally, a case should not be dismissed on the ground of mootness if it implicates issues that are capable of repetition, yet evading review. *Kahn,* 701 N.W.2d at 821. But absent certification as a class action, this only applies "to the situation where two elements are combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)).

Prior to his release from MSH–St. Peter, relator will have a new ECRC risk level determination that will trigger his right to request administrative review under the statute. Minn.Stat. § 244.052, subds. 1(1), 3. Thus, the ALJ correctly concluded that relator failed to establish a "reasonable expectation" that the next determination would evade administrative review.

## DECISION

Under Minn.Stat. § 244.052, subd. 6, relator's request for administrative review of an end-of-confinement risk-level determination is moot because he is civilly committed and not subject to community notification and, therefore, lacks the requisite personal interest in the outcome of the litigation. Consequently, the ALJ did not err in dismissing his request for administrative review.

**Affirmed.**